VOGAN v. LAFAYETTE SOUTH SIDE BANK & TRUST COMPANY.

4-4516

Opinion delivered February 8, 1937.

*C. T. Bloodworth,* for appellant.
*Shane & Fendler,* for appellees.

BAKER, J.  Henry Quellmalz was the owner of a considerable amount of real estate in the western district of Clay county, Arkansas. In addition, he was president and manager of the Henry Quellmalz Lumber & Manufacturing Company. This company was the owner of a considerable amount of real property. After Henry Quellmalz's death the children, who with him were the owners of all the capital stock of the corporation, transferred their respective shares to their mother, Anna Quellmalz, who became president of the corporation. Henry A. Quellmalz, a married son, who is now deceased, became secretary of the corporation and manager of its affairs. Some time during the year of 1923 Henry A. Quellmalz entered into negotiations with the Lafayette South Side Bank & Trust Company to refinance this corporation, and arrangements were made to borrow $100,-000. This money was to be used first to pay off all indebtedness, including a large amount already owing to the bank and other sums of money borrowed upon lands. Some of the lands had been mortgaged by the elder Henry Quellmalz and some, as we understand, by the corporation. The financing scheme was completed and money was placed to the account of the Henry Quellmalz Lumber & Manufacturing Company with an agreement that checks or drafts were to be countersigned by some member of the banking organization for the payment of debts. Numerous mortgages were paid off, some to insurance companies and loan companies, until all of the original debts were then represented by the one debt owing to the appellee bank. As time went on there was finally paid upon this indebtedness approximately $40,-000. The lumber company, however, had become delinquent in its payments, and also in payment of taxes and special assessments upon the lands. After a failure to refinance the obligations of the corporation, suit was

filed in the United States court to foreclose the mortgage or deed of trust. We are not favored with a complete record of that proceeding, but there is an indication there was an effort on the part of some members of the family to assert individual interests in the lands, but this proceeding was abandoned, and not until later, the exact time is not material, a suit was filed by the heirs of Henry Quellmalz against the appellee, asserting that they are the owners by inheritance of all the lands of which Henry Quellmalz died seized. They made no claim to any of the lands or any interest therein that had been owned by the Henry Quellmalz Lumber & Manufacturing Company. A decree was rendered in this suit in 1934.

The effect of this decree was to declare that appellant, Marie Quellmalz Vogan, and her sister, Thetla Quellmalz Mitchell, are the only ones having any interest in the lands which their father had owned as an individual, the finding being to the effect that the widow of Henry Quellmalz and the other two children as officers of the Henry Quellmalz Lumber & Manufacturing Company, joined in the mortgage or deed of trust, as parties or officers of the corporation, conveying the land by the mortgage or deed of trust to the appellee, as the property of the corporation, and that these parties were therefore estopped to set up any claim or interest in said property thereafter. No question is raised here by either of the parties as to the propriety or correctness of the decree, and no appeal was taken therefrom, and it was not thereafter changed or modified in any particular. There was a provision in that decree, however, to the effect that the two daughters who received an interest in the real property took the said lands, subject to certain rights of the appellee bank. The bank had furnished money, the $100,000, a great part of which was borrowed and used to pay off indebtedness upon these lands secured by mortgages and the effect, as we understand, of these proceedings, was to subrogate the bank, the appellee herein, to the rights of the original mortgagees, and at the time of the rendition of this decree the court appointed Mr. T. W. Ratcliffe, as special master to state an

account, determining how much indebtedness should be charged to the one-half interest in these lands recovered by the appellants, and also to determine what other indebtedness as taxes, special assessments or otherwise were properly chargeable against the property, and also to determine the rents and profits that had been derived or gained by the appellee from the use and occupancy of this property from and after the time it had acquired and taken possession thereof after the foreclosure in the United States district court.

Mr. Ratcliffe, as master, was given access to the proof already taken, and was directed to take other proof as it might become necessary to determine the facts and state the account. He took some proof, filed his report, showing an indebtedness found and charged by him against this property after all credits and rents and profits had been given, amounting to approximately $38,000. Exceptions were filed by the appellants to certain parts of the master's report and upon a hearing on these exceptions the court overruled all of them, confirmed the master's report and ordered this property sold in satisfaction of the indebtedness. It is from this order and decree, confirming the master's report, and also from a confirmation of the sale of the lands that this appeal is taken.

The exceptions filed cover the following items: That the master erred in finding and charging any of the expenses incurred by the defendant for a watchman, and, second, that the master erred in charging any alleged losses of the defendant against the lands, and third, that the master erred in charging the amounts paid on a mortgage to the International Harvester Company (meaning, as we suppose, International Insurance Company), and to the Deming Investment Company, and that he did not take into consideration or credit these amounts with payments that had been paid by the Henry Quellmalz Manufacturing Company on the original mortgage, asserting that the defendants were paid in cash such amounts of money before they paid debts to the International Harvester Company and Deming Investment Company. The fourth alleged error is in effect the same

as the third relating to the payments of the same mortgages. The fifth is to the effect the master erred in charging a part of the money alleged to have been advanced by the defendants in July, 1930, and to pay taxes, etc., upon the property, the allegation being that the advancement as made was made to pay taxes, and the taxes paid upon plaintiffs' lands were duly charged in other items, and that these advancements were made to secure a new mortgage and security, and not for any consideration of value in regard to the lands of these plaintiffs; that the master erred in charging any part of the $170.67 for alleged repairs against appellants' lands.

Let it be said in the beginning that since the appellants have not seen fit to abstract evidence as to these several items, but have contented themselves with statements, so whatever discussion we offer will be based upon such statements, together with such other facts as we have been able to find from the report and other information as set forth in the briefs of appellants and appellees.

No objection is made as to the proportional part of the many items which it is admitted were properly chargeable against the lands. The master states:

"That during the time of operation of this estate by the defendant from January 1, 1932, to January 27, 1936, the defendants incurred the following expenses on both Tract No. I and Tract No. II, and which were of benefit to the plaintiffs, as follows:

" 'Salary for watchman, for 49 months
    at $60 per month......................................$2,940.00
" 'Repairs on farm property.......................... 177.67
" 'Taxes paid on lands in both Tract I
    and Tract II.............................................. 4,752.52

    " 'Making in the aggregate.......................$7,870.19'

"Other claims for surveying, timber and farm costs, etc., were not regarded as proper charges; but one watchman was allowed for the entire time of 49 months at $60 per month."

We cannot say as a matter of law that these several items were not properly chargeable against the lands. A

proper decision must rest upon ·prevailing facts. A watchman conceivably could be very useful or necessary for the preservation of property, and in the absence of an effective showing by appellants that this charge was improper, we are impelled to hold that the court was correct in sustaining the master in that regard.

As to the second item about charging alleged losses, we have very little more information than we have in regard to the foregoing matter. As we understand appellants' contention, taxes, special assessments and other items of expense were charged against these lands. The total charge was credited with the amount of rents received therefrom. The rents were somewhat less than the expenses and therefore there was a loss. This loss was occasioned by reason of the payment of necessary items or charges, some of which were liens against the property. If there were losses incurred by bad management, faulty operation, those facts do not appear, and, as said in the foregoing statement, appellants have not shown that the items were improperly charged, and it may be said in this connection that although the appellants have argued that some of the matters charged were for surveying and other items of expense of that kind the supporting facts are not abstracted. The master expressly disclaims that any of those items have been taken into account as proper charges, and no proof is abstracted tending to show otherwise.

As to the third item or charges in regard to the mortgage to the International Harvester Company and the Deming Investment Company, we may also treat other mortgages, or liens for taxes, etc., which were against the lands at the time of the execution of the mortgage by the Henry Quellmalz Lumber & Manufacturing Company, participated in by all the Quellmalz family except the two appellants here, as one or a single item. As we understand appellants' contention, they are asserting that these lands, though under mortgage at the time this money was borrowed, and although money was borrowed for the purpose of paying off indebtedness then existing against the property, the appellee should not be entitled to be subrogated to the rights of those original

mortgagees, although they furnished the funds with which the mortgages were settled or satisfied. It is not argued, however, that this is true as a matter of law, but particularly because of the fact that the mortgage or deed of trust provided that, as payments were made from time to time, lands should be released, and it is the contention that these lands belonging to Henry Quellmalz, as an individual, should have been the first to be released, although the payments reached or aggregated $40,000; that none of the property was ever released.

Appellants argue that, after this money was borrowed, $24,000 was used to pay off a mortgage upon this property, together, as we presume, with some of the corporate property. The series of notes aggregating the same amount for $24,000 was mentioned in this mortgage or deed of trust, and it is argued here that that $24,000 represents the $24,000 secured by a mortgage and paid off in the refunding obligations, and it is further argued that this $24,000 should have been the first money to be regarded as having been repaid out of the $40,000, paid over by the Henry Quellmalz Lumber & Manufacturing Company upon its indebtedness; that had this been done a great deal, if not nearly all, of the property out of which these appellants now claim their rights, would have been free of the mortgage indebtedness.

For the sake of argument only, although we do not believe it is a correct statement, let us assume that appellants' contention in this regard was correct, and upon this assumption we may proceed to determine what the result would be as growing out of appellants' contention in that respect. If the Quellmalz Lumber & Manufacturing Company ever made any demand at the time of the payment of any of these funds to the appellees for the release of any of this property from the mortgage that fact does not appear. It is also apparent from the record that the entire tract of land belonging to Henry Quellmalz, together with that belonging to the Henry Quellmalz Lumber & Manufacturing Company was foreclosed upon and sold by the proceeding in the United States court, and only by that procedure did the appellee obtain title for which it is now sued. The right to

have this property released was also litigated, and the question settled by the decree rendered on the 6th day of December, 1934. The court, at that time, did not decree that any of the lands should be free from the lien, but expressly declared, otherwise, that all of the lands in controversy here were subject to the liens of these former mortgages, and all taxes and special assessments paid out of the borrowed money fund or advanced by the appellee. Therefore, if we should agree that the appellants are right in their contention they are wholly without remedy as all of these rights are predetermined by the decree from which there was no appeal. That decree was final and is conclusive.

It is also argued that, under the law, such payments as were made should have been credited or applied to liquidate the first debt. We agree to that proposition where the matter was not otherwise predetermined, but the contract or mortgage provided that if payments were made before maturity that the application should be made in the inverse order of maturities. That is to say, that all payments not made upon obligations at maturities, but made in advance of maturity in sums of $1,000 or multiples thereof should be credited upon the last maturing obligations, and the $24,000 we have heretofore mentioned was an obligation that matured in regular order in 1934. There is no showing that the $40,000 which had been paid over was such as may have been so applied or could be credited upon unmatured instruments; but notwithstanding that fact, whether the land, or any part thereof, should have been released is disposed of by decrees of the United States court and of the chancery court from no one of which an appeal was ever had. Appellants cite many authorities supporting the maxim in equity to the effect that equity treats that as done which ought to have been done. That maxim cannot serve to correct, change or modify either one of the decrees which decided a proposition different from the contention now made by appellants. In effect, the foregoing are the contentions made in regard to the master's report and the correctness of all these findings of the master and of the court's decree confirming the same

must rest upon the testimony adduced in support thereof. We are not favored with any abstract of testimony showing the incorrectness of the court's action. We must therefore determine that the exceptions were properly overruled. The court, upon confirmation of the master's report, decreed that appellant's land should be sold in satisfaction of the indebtedness, lien of which was properly declared upon the land, and the decree was prepared and duly approved by counsel for appellants, although counsel now asserts that he did not observe or take notice at the time that the decree provided for an immediate sale. He has now filed exceptions to the sale of the lands, insisting that the court should not have confirmed this sale for the reason that the appellants were not able within the short time to procure purchasers, or to find a means by which they could protect their interests in the property. They did, however, procure one or two prospective purchasers. It is asserted in the exceptions to the sale that the appellee company and its agents refused to disclose to prospective buyers facts within their knowledge, and they discouraged prospective buyers from appearing at the proper time to bid for the property, one of these being a gentleman from Poplar Bluff, Missouri, concerning whom it is alleged that he had been advised the sale would be at 1:00 o'clock in the afternoon and appeared at Corning at that time to bid upon the property. The sale, however, was had at 10:00 a. m., three hours prior to the hour of the appearance of the prospective bidder.

All these matters were controverted, and we do not find the decision to be against a preponderance of the evidence.

At the sale the appellee bid the debt against the property. A few days after the sale, counsel for the appellee wrote a letter, copy of which was sent to counsel for appellants, and a copy or the original sent to the prospective purchaser at Poplar Bluff, Missouri. The effect of the letter was that the appellee did not desire to retain the property, if appellants could make a sale thereof advantageous to themselves, or that the prospective bidder from Poplar Bluff, if he desired to do so,

could take over the bid they had offered for the property, and by executing proper bond to secure the purchase price he would be assigned a certificate of purchase. There was no offer to raise the bid made, not even an offer to secure or pay costs of readvertising the property, nor the execution of any bond or any form of indemnity to protect this judgment lien creditor in the event a new sale was ordered.

This suit in one form or other has been pending now for several years. Appellees have taken considerable amount of loss in the sale of property at the first foreclosure in the United States court. There is a deficiency judgment we are told of approximately $20,000. There is no income from the property sufficient to meet taxes and special assessment requirements, and other expenses, and the case is not brought within the rules we have recently announced in cases wherein sales were improvident and new sales ordered. There is no real inadequacy of price. *Pope* v. *Shannon Bros.*, 190 Ark. 441, 79 S. W. (2d) 278.

No real questions of law have been involved herein, except possibly the most elementary principles. We think the facts have been determined correctly.

The decree and order appealed from are, therefore, affirmed.